UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 700 VALENCIA STREET LLC,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FARINA FOCACCIA & CUCINA ITALIANA, LLC,<br><br>　　　　Defendant. | Case No. 15-cv-04931-JCS<br>Related Case No. 15-cv-02286-JCS<br><br>**ORDER DENYING MOTION FOR A NEW TRIAL AND MOTION TO AMEND FINDINGS OF FACT AND VACATING MOTION HEARING**<br><br>Re: Dkt. Nos. 114, 115 |

## I.　INTRODUCTION

The Court conducted a bench trial in this action and issued Findings of Fact and Conclusions of Law. *See* Dkt. No. 97. Subsequently, the Court entered judgment in favor of 700 Valencia. *See* Dkt. No. 11. Presently before the Court are two motions ("Motions") brought by Farina Focaccia & Cucina Italiana, LLC ("Farina"): 1) Motion for a New Trial, to Open the Judgment and Take Additional Testimony ("Rule 59 Motion"); and 2) Motion Questioning the Sufficiency of the Evidence Regarding Findings of Fact and Conclusions of Law, Seeking Amended Findings of Fact and Conclusions of Law and an Amended Judgment ("Rule 52 Motion"). The Court finds that the Motions are suitable for determination without oral argument pursuant to Civil Local Rule 7-1(b). **Accordingly, the motion hearing previously set for October 27, 2017 is vacated.** For the reasons stated below, the Motions are DENIED.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. THE RULE 59 MOTION

### A. Legal Standard

Under Federal Rule of Civil Procedure 59(a)(1), a court "may, on motion, grant a new trial on all or some of the issues." Fed. R. Civ. P. 59(a)(1). A court may grant a new trial "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). "A judge should grant a new trial only if she 'is left with the definite and firm conviction that a mistake has been committed.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2016 WL 3880774, at *3 (N.D. Cal. July 18, 2016) (quoting *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (internal citations omitted)). The court is not required to view the trial evidence in the light most favorable to the verdict when it considers a Rule 59(a) motion. *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014). Instead, "the district court can weigh the evidence and assess the credibility of the witnesses." *Id.* "Ultimately, the district court can grant a new trial under Rule 59 on any ground necessary to prevent a miscarriage of justice." *Id.* (citing *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990)).

### B. Discussion[2]

Farina asks the Court to reopen testimony to allow witness Erica McDowell to testify because she was unwell when she testified at trial and had to be excused before she completed her testimony. Farina contends Ms. McDowell should be permitted to testify when she is "clear-headed" and offers a declaration by Ms. McDowell in which she states that at the time of trial she was experiencing an adverse reaction due to changes in her prescribed medications. Dkt. No. 115-1. She further states that if she is permitted to testify, she will testify, consistent with her deposition testimony, that with respect to the envelope in which she says she placed a check and the option renewal notice, she is "not certain whether [she] mailed the envelope [herself] or not, but, if [she] did so, it would have been mailed from a post office in the East Bay – not San

---

[2] Because the parties are familiar with the facts of the case, the Court does not repeat them here.

Francisco." *Id.* The Court concludes that Farina has failed to establish that a new trial is warranted to allow Ms. McDowell to testify.

As a preliminary matter, the Court notes that Farina waived this argument by failing to request a continuance at trial, when it was apparent that Ms. McDowell was experiencing medical difficulties. If Farina believed that it should be permitted to bring Ms. McDowell back to testify when she was no longer experiencing such difficulties, the time to make that request was at trial. *See Kaiser Steel Corp. v. Frank Coluccio Constr. Co.*, 785 F.2d 656, 658 & n. 2 (9th Cir.1986); *see also* 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2805 (2d ed. 1995) ("A principle that strikes very deep is that a new trial will not be granted on grounds not called to the court's attention during the trial unless the error was so fundamental that gross injustice would result."). Having failed to make such a request, Farina may not now seek to reopen testimony on this basis.[3]

Even assuming the argument is not waived, however, it fails on the merits. Farina's request to reopen testimony appears to be aimed at showing that the various statements made by Ms. McDowell regarding the mailing of the envelope that purportedly contained the option renewal notice are consistent, whether she stated that she "caused" the envelope to be mailed (as stated in her declaration), or that she "believed" she took it to the post office (as stated in her deposition), or that she *would have* mailed it from the East Bay (and not from San Francisco) if she had, in fact, mailed it herself (as she intends to testify if the Court grants Farina's Rule 52 Motion). In the end of the day, these nuances are inconsequential, however, because whatever version is offered, Ms. McDowell's testimony cannot fill the evidentiary gap that is crucial to Farina's position, namely, "*how* the certified mail envelope she says contained the option renewal

---

[3] In its Rule 52 Motion, Farina's counsel states that even at the time Farina filed its post-trial brief, on November 30, 2016, counsel did not have a copy of the trial transcript. *See* Rule 52 Motion at 7. Indeed, notably absent from Farina's post-trial brief are any citations to specific trial testimony. Given that the full transcript was available by November 8, 2016, *see* Case No. 15-4931, Dkt. Nos. 83 and 86, it is unclear to the Court why Farina's counsel did not have access to a trial transcript. Certainly, the fact that Farina's counsel did not have a copy of the trial transcript at the time he filed Farina's post-trial brief does not excuse Farina's failure to make any arguments that it could have made at that time had it timely requested a copy of the trial transcript from the court reporter.

3

United States District Court
Northern District of California

1 notice made its way into the mail at all." Findings of Fact and Conclusions of Law, ¶ 31.

2 Because Farina has not demonstrated that Ms. McDowell's testimony would lead the Court to

3 change its conclusion that Farina did not send the option renewal notice, it is not necessary to

4 reopen testimony in order to prevent a miscarriage of justice.

5 The Rule 59 Motion is DENIED.

### III. THE RULE 52 MOTION

#### A. Legal Standard

Rule 52(b) of the Federal Rules of Civil Procedure provides that in cases tried without a jury, "the court may amend its findings – or make additional findings – and may amend the judgment accordingly." Motions under Rule 52(b) are granted in order to correct manifest errors of law or fact or to address newly discovered evidence. *Wade v. United States*, No. C-09-01976 JCS, 2012 WL 2990700, at *2 (N.D. Cal. July 20, 2012) (citing *Town House Dep't Stores, Inc. v. Ahn*, 2003 WL 881004 (Guam Ter. March 7, 2003) ("a motion to amend under Rule 52(b) is intended 'to correct manifest errors of law or fact or, in some limited situations, to present newly discovered evidence'") (quoting *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1219 (5th Cir. 1986)). Rule 52(b) motions "are not intended to serve as a vehicle for a rehearing" and "are designed to correct findings of fact which are central to the ultimate decision." *ATS Prod. Inc. v. Ghiorso*, No. C10-4880 BZ, 2012 WL 1067547, at *1 (N.D. Cal. Mar. 28, 2012) (citations omitted). "Furthermore, a motion to amend a court's factual and legal findings is properly denied where the proposed additional facts would not affect the outcome of the case or are immaterial to the court's conclusions." *Id*. (citations omitted).

#### B. Discussion

In its Rule 52 Motion, Farina contends five factual findings relating to delivery of the option renewal notice – Findings of Fact Nos. 28, 29, 30, 31 and 33 – are contrary to the weight of the evidence presented at trial and should be amended. Farina further asserts that "Finding of Fact No. 39 (concluding that the Kostelni Sublease was a total and material breach of the Lease and that Minna acted intentionally) cannot stand" because "[i]f there are no damages – as here – there can be no 'material breach.'" Rule 52 Motion at 4 & Bohachek Decl., Ex. C (excerpt of

4

O'Connor testimony). For the reasons stated below, the Court concludes that Farina has failed to establish any manifest error of law or fact that warrants the relief it requests in the Rule 52 Motion.

**1. Finding Regarding Material Breach of the Lease**

Finding of Fact No. 39 states as follows:

> As the Court explained in its summary judgment order, "breaches of contractual provisions limiting the right to sublet may well be material, even if the lessee continues to be liable for breaches of the lease by the subletter." Summary Judgment Order at 22 (citing *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. at 1051). Here, the testimony of O'Connor, Minna and Kostelni was consistent that Kostelni and O'Connor had a history of business disputes. The evidence further reflected that Farina did not provide financial information about Kostelni in support of its request to change the Lease. Moreover, given that Giacomazzi had openly proposed to O'Connor that the modified Lease would essentially be a sham used to mislead ABC, O'Connor reasonably believed that Farina's efforts to add Kostelni to the Lease were somehow related to illegal or unethical conduct. In short, it is clear from the evidence presented at trial that O'Connor would not have approved the sublease had he been informed of it and would have had a reasonable basis for refusing to approve the sublease. Under these circumstances, Farina's failure to notify O'Connor of the Kostelni sublease or obtain 700 Valencia's consent as required under the Lease constituted a material breach of the terms of the Lease. For the same reasons, the Court finds that the breach was willful for the purposes of California Civil Code section 3275.

Findings of Fact and Conclusions of Law, ¶ 39.

Farina argues, in an entirely conclusory manner and without citing any authority, that the Kostelni sublease was not a material breach of the Lease, even though it was not authorized by 700 Valencia, because it resulted in no damages, referring to "[r]elevant portions of O'Connor's Trial testimony." Rule 52 Motion at 4. It also argues that Minna's trial testimony established that Farina's conduct with respect to the Kostelni sublease was not in bad faith. *Id.* at 5. It does not, however, address any of the case law that the Court discussed in its summary judgment order or its Findings of Fact and Conclusions of Law, including the case law supporting the conclusion that the sort of damage to which O'Connor testified – being "forced . . . into a relationship with Mr. Kostelni" – may be sufficient to constitute a material breach. Nor does Farina point to any evidence suggesting that the Court erred, as a factual matter, when it concluded that O'Connor and

5

Kostelni "had a history of business disputes" and that Farina had failed to provide O'Connor with any financial information about O'Connor when Giacomazzi raised the possibility of putting Kostelni's name on the Lease.

Similarly, while Farina points to testimony by Minna that it contends shows that Farina did not act in bad faith, namely, that Minna believed that the Kostelni sublease did not require prior approval from 700 Valencia due to a "loophole" in the Lease, it does not explain why the Court's conclusion to the contrary constitutes manifest error. Given that the Court concluded on summary judgment that the alleged "loophole" was inconsistent with the "plain language of the Lease," Summary Judgment Order at 22, and found at trial that Minna was not "completely credible" as a witness, *see* Findings of Fact and Conclusions of Law ¶ 21, the Court could reasonably conclude that Minna, and by extension Farina, knew that the Lease required that Farina obtain prior approval from 700 Valencia of the sublease with Kostelni and intentionally concealed it from O'Connor.

Accordingly, the Court rejects Farina's challenge to Finding of Fact No. 39 and more broadly, concludes that Farina has not identified any basis for reversing the Court's conclusion that Farina was not entitled to exercise the renewal option in the Lease because it was in material breach of the Lease when it allegedly exercised the renewal option.

### 2. Findings Regarding Whether Farina Sent the Option Renewal Notice

Farina challenges numerous findings of fact related to the question of whether it sent the option renewal notice to 700 Valencia in December 2014. As a preliminary matter, even if Farina were to persuade the Court that it erred as to any or all of these factual findings and that Farina did, in fact, mail the option renewal notice to 700 Valencia when some of its witnesses say it did, 700 Valencia would still be entitled to judgment in its favor on the ground that Farina was not entitled to exercise the option due to its material breach of the Lease. As a consequence, Farina's challenges to the factual findings related to delivery of the option notice fail on the basis that they do not affect the outcome of 700 Valencia's unlawful detainer case. *See ATS Prod. Inc. v. Ghiorso*, No. C10-4880 BZ, 2012 WL 1067547, at *1 (N.D. Cal. Mar. 28, 2012) (citations omitted). Further, Farina has not established that the Court's factual findings are against the clear

6

weight of the evidence for the reasons discussed below.

         a. Finding of Fact No. 28

Finding of Fact No. 28 states as follows:

> At the summary judgment stage of the case, Farina submitted a sworn declaration by Erica McDowell, signed June 17, 2016, to establish that the Option Renewal Notice was sent to 700 Valencia by certified mail on December 9, 2014. McDowell stated in her declaration that: 1) pursuant to Minna's instructions, on December 9, 2014 she made a copy of the Option Renewal Notice and placed the original in an envelope that she sent, by Certified Mail, return receipt requested, to Mr. O'Connor; 2) the last four digits of the Certified Mail stamp on the envelope that contained the Option Renewal Notice were 2843; 3) that she sent a separate envelope to O'Connor on December 12, 2014 containing rent checks, including a rent check for December 2014, also by Certified Mail, with last four digits 2850, but did not request a signed receipt for that delivery; and 4) that she subsequently received a receipt with the last four digits 2843 signed by Mr. O'Connor and reflecting that he had received the envelope on December 12, 2014. Trial Ex. 9. If true, this testimony would establish that Farina sent the Option Renewal Notice to 700 Valencia on December 9, 2014 by certified mail and that the notice was actually received by John O'Connor. The Court cannot credit the statements in McDowell's declaration, however, for the reasons stated below.

Findings of Fact and Conclusions of Law, ¶ 28. Farina appears to challenge the Court's characterization of Ms. McDowell's various statements about whether she sent the envelope with the option renewal notice in it, pointing to specific wording such as that she "caused to be sent" the envelope or that she "believed" she sent it. Farina fails to explain why these nuances matter or to show that the Court's description of her statements in Finding of Fact No. 28 is clearly erroneous. Further, Farina's suggestion that the finding is wrong because it refers to "a rent <u>check</u> for 2014" that was sent on December 12, 2014 when there were, according to Farina, *two* rent checks sent on that date, makes no sense. Motion at 8. The sentence from which this language is taken (which merely summarizes Ms. McDowell's declaration) clearly states that according to Ms. McDowell, "she sent a separate envelope to O'Connor on December 12, 2014 containing *rent checks*, including a rent check for December 2014." Findings of Fact and Conclusions of Law ¶ 28 (emphasis added). Therefore, the Court rejects Farina's argument that this finding of fact should be amended.

         b. Finding of Fact No. 29

Finding of Fact No. 29 states as follows:

> First, O'Connor testified that the only certified mail envelope he received from Farina during this time period was one that contained the December rent check. The Court finds this testimony credible, supporting the conclusion that the return receipt O'Connor signed on December 12, 2014 (for the Certified Mail stamp number ending in 2843) was for the envelope that contained the December rent check and not the Option Renewal Notice. This conclusion is supported by the fact that the rent was already 8 days late by the time this envelope was sent and also by O'Connor's testimony, which the Court found credible, that Farina had sent several other rent checks by certified mail.

Findings of Fact and Conclusions of Law, ¶ 29. The basis for Farina's challenge to this finding is unclear. Farina argues that this finding is erroneous because the December rent check for Farina Pizza "could not have been sent on December 12, 2014 . . . because an envelope containing **something** was received by Mr. O'Connor on December 12." Motion at 9. The Court agrees that it would be illogical to find that the envelope that O'Connor received and signed for on December 12 was sent on that same day. The Court made no such finding, however, either in Finding of Fact No. 28 or elsewhere in its Findings of Fact and Conclusions of Law. Therefore, the Court concludes this argument has no merit.

### c. Finding of Fact No. 30

Finding of Fact No. 30 states as follows:

> Second, to the extent that McDowell stated in her declaration that the certified mail envelope for the Certified Mail stamp number ending in 2843 contained the Option Renewal Notice (rather than the rent check), the Court declines to credit that testimony. McDowell testified at trial that she had signed under penalty of perjury a declaration containing misstatements of fact that was filed in a separate judicial proceeding, admitting that she simply signed what was presented to her without reading the declaration. See Trial Ex. 8. The Court has no confidence that the same is not true of the declaration McDowell submitted in this case.

Findings of Fact and Conclusions of Law, ¶ 30. Farina concedes that the Court "may disregard the testimony of Ms. McDowell . . . but there is no reason to doubt the testimony of Mr. Blitzer." Rule 52 Motion at 9. As this finding addresses Ms. McDowell's testimony and does *not* make any finding as to Mr. Blitzer's testimony, Farina has not demonstrated that it is erroneous for the purposes of Rule 52.

### d. Finding of Fact No. 31

Finding of Fact No. 31 states as follows:

> The Court's conclusion that McDowell's testimony is entirely unreliable finds further support in the fact that she offered inconsistent testimony as to how the certified mail envelope she says contained the Option Renewal Notice made its way into the mail at all. While she testified prior to trial that she remembered personally taking the envelope containing the Option Renewal Notice to the Pleasant Hill Post Office to mail, she conceded at trial that she must not have mailed the envelope herself because the stamp on the envelope showed that it was sent from a post office in San Francisco. Although she speculated that Marius Popescu must have taken the envelope to the post office, she had no specific memory that he had.

Findings of Fact and Conclusions of Law, ¶ 31.

Farina contends this finding should be amended because Ms. McDowell's testimony at trial was different from her deposition testimony and, as discussed above, her trial testimony should be disregarded because she was suffering from a medical condition that prevented her from testifying with a "clear head." Rule 52 Motion at 10. Farina's suggestion seems to be that while at trial Ms. McDowell offered testimony that she had actually mailed the envelope with the option renewal notice in it herself – testimony that she had to retract when faced with evidence that the envelope for which O'Connor signed on December 12 was posted from a post office in San Francisco – at her deposition she was more clear in her testimony that she *believed* she mailed it and that *if* she had mailed the envelope it would have been from the Pleasant Hill Post Office.

The Court does not find Farina's argument persuasive. At her deposition, Ms. McDowell testified that while she "couldn't be "100%" as to who delivered the envelope she says contained the option renewal notice to the post office, she "believe[d] [she] did." Dkt. No. 114-1 at ECF pp. 42, 45 (McDowell Dep. Excerpt at pp. 50, 53). Similarly, at trial she initially testified that she was the person who would have mailed the envelope, though she did not have a specific memory of doing so. Dkt. No. 114-1 at ECF pp. 8-10. Later, when confronted with evidence that the envelope was mailed from San Francisco, she conceded that she could not have mailed the envelope and that it must have been mailed by Marius Popescu. Trial Transcript at 222-223. Regardless of whether Ms. McDowell had a genuine good faith belief that she mailed the envelope

9

1 containing the option renewal notice (and the Court will assume here that she did), it is clear that

2 her testimony to that effect (both at her deposition and at trial) is entirely unreliable because Ms.

3 McDowell has no memory one way or the other of whether she mailed the envelope. Nor does it

4 appear she has any specific memory of Popescu mailing the envelope (and Popescu himself denied

5 that he did). Therefore, the Court finds no basis for amending this finding of fact.

e. Finding of Fact 33

Finding of Fact No. 33 states as follows:

> While Blitzer testified that he was in the office on the day McDowell prepared the certified mail package containing the Option Renewal Notice and testified that he saw McDowell place it in an envelope, he also testified that he did not know who actually took the envelope to the post office. Nor did he offer specific testimony about the Certified mail stamp number on the envelope that would allow the Court to draw a reasonable inference that the Option Renewal Notice was placed in the certified mail envelope that O'Connor received and signed for.

Findings of Fact and Conclusions of Law ¶ 33. Farina's challenge to this finding is based on the testimony of Mr. Blitzer at trial regarding his observation of Ms. McDowell's preparation of an envelope containing the option renewal notice. Farina contends the Court has confused the two envelopes, pointing to Trial Exhibits 133 (the envelope that was received and signed for by O'Connor, with a fully hand-written delivery address) and Trial Exhibit 145 (a "window" envelope that contained at least one rent check, with only the name "Jon O'Connor" written by hand above the address printed on the check). According to Farina, because Mr. Blitzer offered testimony about the handwriting on the envelope that he observed Ms. McDowell prepare (which included placing the option renewal notice inside), *see* Trial Transcript at 362-363, this testimony also establishes that the envelope that was received by Mr. O'Connor *must* have been the one that contained the option renewal notice.

The Court rejects Farina's argument as to Finding of Fact No. 33. While the Court found that Mr. Blitzer's testimony regarding the preparation of the option renewal notice was "somewhat" credible, *see* Findings of Fact and Conclusions of Law, ¶ 26, on the specific question of *which* of the two envelopes offered as trial exhibits (Trial Exhibit 133 or 145) was the one in which he saw Ms. McDowell place the option renewal notice the testimony is not specific enough

to persuade the Court that its finding is in error. The Court notes that while the full address is handwritten on Trial Exhibit 133, the name portion of the address in Trial Exhibit 145 is also handwritten. Thus, Mr. Blitzer's testimony as to the "writing on the envelope" could apply to either envelope. *See* Trial Transcript at 362. Further, when pressed by the Court, Mr. Blitzer testified that he remembered the envelope was addressed to O'Connor but did not remember the specific address on the envelope. *Id.* Nor did he appear to have any memory of the handwriting on the face of envelope in the address area, testifying that while he remembered that the return receipt was written in "very nice" handwriting, it was "hard to remember" whether the handwriting on the envelope itself was the same. *Id.* at 364. In fact, the only thing Mr. Blitzer appeared to remember noticing about the envelope itself was that it was "addressed to Mr. O'Connor." *Id.* At no point did Mr. Blitzer identify the envelope in Trial Exhibit 133 as the one he saw that day. Therefore, the Court finds no manifest error as to Finding of Fact No. 33.

## IV. CONCLUSION

For the reasons stated above, the Motions are DENIED.

**IT IS SO ORDERED.**

Dated: October 18, 2017

JOSEPH C. SPERO
Chief Magistrate Judge