UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 700 VALENCIA STREET LLC,<br><br>Plaintiff,<br><br>v.<br><br>FARINA FOCACCIA & CUCINA ITALIANA, LLC,<br><br>Defendant. | Case No. 15-cv-04931-JCS<br>Related Case No. 15-cv-2286 JCS<br><br>**ORDER GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS, VACATING MOTION HEARING AND MOVING CASE MANAGEMENT CONFERENCE FROM 9:30 A.M. TO 2:00 P.M. ON FEBRUARY 16, 2018**<br><br>Re: Dkt. No. 122 |

## I. INTRODUCTION

Following a bench trial, the undersigned found in favor of 700 Valencia Street LLC ("700 Valencia") in this unlawful detainer action. 700 Valencia brought a Motion for Entry of Judgment, Damages, Writ of Possession, Attorneys' Fees and Costs, and Other Relief (Dkt. No. 104) ("First Fee Motion"). The Court granted that motion in part, finding that 700 Valencia was entitled to an award of reasonable attorneys' fees and costs but deferring consideration of the amount until after it had ruled on Farina's post-trial motions. *See* Dkt. No. 110. The post-trial motions were resolved and 700 Valencia now brings a renewed motion for an award of attorneys' fees and costs ("Motion" or "Renewed Fee Motion"). The Court finds that the Motion is suitable for determination without oral argument and therefore **vacates the motion hearing set for February 16, 2018 pursuant to Civil Local Rule 7-1(b).** The Court also vacates the Case Management Conference set for the same day in Case No. 15-cv-4931. **The Case Management Conference in Related Case No. 15-cv-2286, which is scheduled for the same date, is moved from 9:30 a.m. to 2:00 p.m.**[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

In the First Fee Motion, 700 Valencia requested $675,611.73 in attorneys' fees for 1,010.9 hours of work performed by six attorneys and three legal assistants. It also requested costs in the amount of $24,872.69. First Fee Motion at 10. In the Renewed Fee Motion, 700 Valencia sought attorneys' fees in the amount of $697,864.93 for 1071.9 hours of work performed by six attorneys and three legal assistants through September 29, 2017, as well as an additional $10,000 in estimated fees for work on the instant motion. In addition, it requested $21,635.79 in costs. This reduced amount reflects an adjustment in the costs requested for service of process made by 700 Valencia in response to Farina's opposition to its First Fee Motion.

Finally, on February 2, 2018, in response to the Court's request, 700 Valencia submitted timesheets and a declaration reflecting that it has incurred $17,280.45 in fees since October 1, 2017, which includes: (a) $9,620.55 to prepare the Renewed Fee Motion and reply brief in support thereof and the contemporaneously-filed Application for Writs of Execution and Possession (as well as miscellaneous case management stipulations); and (b) $7,659.90 to execute the Writ of Possession in coordination with the U.S. Marshals Service (including researching the U.S. Marshal's eviction and levy procedures). Thus, the updated amount 700 Valencia seeks in attorneys' fees is $715,145.38 (that is, $697,864.93 plus $17,280.45). The amount of costs requested remains $21,635.79.[2]

Farina objects that both the rates requested and the time expended by 700 Valencia's counsel is excessive. It also argues that certain costs are not allowable, as discussed further below.[3]

---

[2] Farina has not filed any objections to 700 Valencia's supplemental materials, and the deadline for objection has now passed. *See* Docket No. 142.
[3] Farina also argued in its opposition to both the First Fee Motion and the Renewed Fee Motion that any award of fees and costs should be adjusted downward to take into account the improvements made by Farina to 700 Valencia's property. The Court rejected Farina's argument already in its August 11, 2017 Order and therefore does not revisit that question here. *See* Docket No. 110 at 5 ("The Court also rejects Farina's argument that the Court should exercise its equitable power to deny 700 Valencia an award of damages (or attorneys' fees) because 700 Valencia will be unjustly enriched if it is allowed both to take possession of a much-improved property and also to receive an award of damages and attorneys' fees in this action.").

## III. ANALYSIS

### A. Legal Standard

Both federal and California courts have adopted the "lodestar" method for determining reasonable attorneys' fees. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see PLCM Grp. v. Drexler*, 22 Cal.4th 1084, 1095 (fee setting inquiry in California ordinarily begins with the lodestar). The lodestar figure is the product of the hours counsel reasonably spent on the case and a reasonable hourly rate. *Id.*; *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). While the court is permitted to adjust the lodestar figure pursuant to a variety of factors, there is a strong presumption that the lodestar is reasonable. *Johnson v. Lin*, No. 2:13–cv–01484–GEB–DAD, 2016 WL 1267830, at *1 (E.D. Cal. Mar. 31, 2016).

"[A]ssessing how much time an attorney can reasonably spend on a specific case . . . always depend[s] on case-specific factors including, among others, the complexity of the legal issues, the procedural history, the size of the record, and when counsel was retained." *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1136 (9th Cir. 2012). Further, to determine whether a party's claimed hours are reasonable, the court must review attorneys' time records to determine whether the hours are adequately documented in a manner that can be properly billed directly to clients. *Hensley*, 461 U.S. at 434; *see also Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (holding that the fee applicant bears the burden of submitting detailed time records justifying the hours claimed to have been expended). A fee applicant should "exercise 'billing judgment' with respect to hours worked." *Id.* at 437. The court also must assess whether the hours claimed are vague, block-billed, excessive or duplicative. *See Navarro v. General Nutrition Corp.*, No. C 03–0603 SBA, 2005 WL 2333803, at *4 (N.D. Cal. Sept. 22, 2005).

The fee applicant also has the burden of producing satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation. *Jordan*, 815 F.2d at 1263. As a general rule, the forum district represents the relevant legal community. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). Fee applicants may provide affidavits of practitioners from the same forum with similar experience to establish the reasonableness of the hourly rate sought. *See, e.g.,*

3

*Mendenhall v. Nat'l Transp. Safety Bd.,* 213 F.3d 464, 471 (9th Cir. 2000); *Jones v. Metro. Life Ins. Co.*, 845 F. Supp. 2d 1016, 1024–25 (N.D. Cal. 2012). Decisions by other courts regarding the reasonableness of the rate sought may also provide evidence to support a finding of reasonableness. *See Widrig v. Apfel*, 140 F.3d 1207, 1210 (9th Cir. 1998) (holding that a rate set by the district court based, in part, on the rate awarded to same attorney in another case, was reasonable).

### B. Lodestar Amount

#### 1. Reasonable Rates

700 Valencia seeks the following hourly rates for the attorneys and legal assistants who worked on the instant action: 1) Jonathan Hughes (Partner) - $795 (2016), $751.50 (2017); 2) Kenneth Neale (Partner) - $775; 3) Benjamin Wolinsky (Associate) - $675; 4) Zachary Fayne (Associate) - $670.50; 5) Neda Khoshkhoo (Associate) - $420; 6) Jerome Ferrer (Legal Assistant) - $355; 7) Kinson Yee (Legal Assistant) - $335; 8) Marc Schiess (Legal Assistant) - $355. *See* Second Hughes Decl. [Dkt. No. 122-2] ¶ 16. For the reasons stated below, the Court concludes all of these rates are reasonable except for that requested for Marc Scheiss, which the Court reduces.

##### a. Hughes

Hughes was lead counsel on this case. *Id.* ¶ 4. He was admitted to practice in California in 1996 and completed a one-year clerkship. *Id.* In 1997, after his clerkship, he joined the Howard Rice firm as a litigator and he has worked continuously as a litigator since that time. *Id.* When Howard Rice combined with Arnold & Porter to become Arnold & Porter Kaye Scholer ("APKS"), Hughes remained with the firm, eventually becoming a shareholder and partner. He has extensive trial experience and has been recognized by the *Daily Journal* as one of California's "Top 100 Attorneys" (2014), by *California Lawyer* as one of the "Attorneys of the Year" (2015) and as a *Northern California Super Lawyer* (2007, 2014-2016). *Id.* Hughes's standard billing rate is $795/hour and 700 Valencia was billed at that rate in 2016. *Id.* ¶ 16. In 2017, 700 Valencia was given a 10% discount on Hughes's rate and thus the rate charged in that year for Hughes's work was $751.50/hour. In support of these rates, 700 Valencia offers Hughes's own declaration and the declaration of Gary Greenfield, whose business, Litigation Cost Management ("LCM"),

4

consults regarding legal-fee related issues. First Greenfield Decl. [Dkt. No. 104-9] ¶ 3; Second Greenfield Decl. [Dkt. No. 122-8] ¶ 3. According to Greenfield, Hughes's rate is "within the market for commercial real estate litigators in San Francisco." *Id.* ¶ 36. The Court finds that the rates requested for Hughes are reasonable.[4]

### b. Neale

Kenneth Neale is a partner at APKS who specializes in transactional real estate law and who offered assistance with respect to a specific issue, the depreciation of restaurant equipment, in preparation for a settlement conference in this action. Second Hughes Decl. ¶ 6. His hourly rate is $775. *Id.* ¶ 16. He is a 1986 law school graduate. Greenfield Decl. ¶ 42. Greenfield opines that Neale's rate, which is lower than Hughes's, is reasonable and an appropriate rate for the work he did. The Court finds that the rate requested for Neale is reasonable.

### c. Wolinsky

Benjamin Wolinsky graduated from Georgetown University Law Center in 2010. Second Hughes Decl. ¶ 9. He was a sixth-year associate at APKS in 2016. *Id.* In 2017, he was named a "Rising Star" in general litigation by the *Northern California Super Lawyers*. *Id.* In February 2017, Mr. Wolinsky left APKS to become an Assistant United States Attorney for the Eastern District of California. *Id.* His hourly rate was $675. *Id.* ¶ 16. According to Greenfield, based on the rates in LCM's rate database, this rate is at the 79th percentile for Northern District lawyers who graduated between 2007 and 2013, whose rates range from $225 to $875 per hour. Second Greenfield Decl. ¶ 39. Greenfield opines that Wolinsky's rate is reasonable and an appropriate rate for the work he performed in the litigation. *Id.* The Court finds that the rate requested for Wolinsky is reasonable.

### d. Fayne

Zachary Fayne is a seventh-year associate who graduated *cum laude* from Harvard

---

[4] The Court's conclusion finds further support in the Declaration of Earl Bohachek, Dkt. No. 47, in which Bohachek states that attorneys in San Francisco with experience comparable to his generally charge between $750 and $850 an hour. While Hughes has not practiced as many years as Bohachek, Hughes's extensive trial experience and the recognition he has received establish that his experience is at least comparable to Bohachek's for the purposes of determining a reasonable rate.

1 Law School in 2009. Second Hughes Decl. ¶ 10. His hourly rate is $670.50. *Id*. ¶ 16. According to Greenfield, based on the rates in LCM's rate database, this rate is at the 73rd percentile for Northern District lawyers who graduated between 2005 and 2013, whose rates range from $225 to $940 per hour. Second Greenfield Decl. ¶ 41. Greenfield opines that Fayne's rate is reasonable and an appropriate rate for the work he performed in the litigation. *Id.* The Court finds that the rate requested for Fayne is reasonable.

### e. Khoshkoo

Neda Khoshkhoo graduated from the University of California, Berkeley School of Law in 2015. Second Hughes Decl. ¶ 8. She was a first-year associate at APKS in 2016. *Id*. In August 2016, she left APKS to clerk for a district court judge. *Id*. Her hourly rate was $420. *Id*. ¶ 16. According to Greenfield, based on the rates in LCM's rate database, this rate is at the 58th percentile for Northern District lawyers who graduated in 2015, whose rates range from $285 to $470 per hour. Second Greenfield Decl. ¶ 40. Greenfield opines that Koshkoo's rate is reasonable and an appropriate rate for the work she performed in the litigation. *Id.* The Court finds that the rate requested for Koshkoo is reasonable.

### f. Ferrer, Yee and Scheiss

Mr. Ferrer and Mr. Yee each have over 20 years of legal assistant experience, and Mr. Schiess has over ten years of experience. Second Hughes Decl. ¶ 11. Mr. Ferrer (the legal assistant who billed the most time on this matter) has served as the lead legal assistant in over 20 complex litigation trials. *Id*. The rates requested for these individuals are $355 an hour (Ferrer and Schiess) and $335 an hour (Yee). Greenfield opines that these rates are reasonable and within the market for paralegals in the Northern District. Second Greenfield Decl. ¶ 43. Based on the experience of the undersigned, these rates are on the high side. As to Ferrer, the Court nonetheless finds the $355 rate sought to be reasonable based on his many years of experience and the fact that he has been lead legal assistant in numerous complex litigation trials. *See Perfect 10, Inc. v. Giganews*, *Inc*., No. CV 11-07098-AB SHX, 2015 WL 1746484, at *21 (C.D. Cal. Mar. 24, 2015), aff'd, 847 F.3d 657 (9th Cir. 2017)(finding in 2015 that rate of $345 an hour for a paralegal practicing in the Central District of California was on the "higher end" but concluding that rate

was reasonable in light of paralegal's 23 years of experience). Likewise, the $335 rate sought for Yee is reasonable based on his many years of experience. 700 Valencia has not demonstrated that Schiess's rate is reasonable, however. In particular, it seeks a rate of $355 for Schiess, who has only ten years of experience (that is, approximately half the experience of Ferrer and Yee in terms of years), and offers no explanation for the fact that Schiess's requested rate is the same as Ferrar's and higher than Yee's. Therefore, the Court reduces Schiess's rate to $335 an hour.

### 2. Reasonable Time

700 Valencia has provided both detailed time sheets listing each item for which it billed and an exhibit breaking down the time spent into broad categories of work performed in this action. *See* Second Hughes Decl., Exs. A (attorney timesheets), B (paralegal timesheets) & C (Chart); *see also* Third Hughes Decl. (Docket No. 141) ¶ 4 & Ex. A (updated timesheets). The categories of work are: 1) Case Management (34.6 hours); 2) Written Discovery (141 hours); 3) Depositions (105.9 hours); 4) Summary Judgment (209.7 hours); 5) Settlement (36.8 hours); 6) Trial (412.4); 7) Miscellaneous, including legal research, communications with clients and internal meetings (26.6); 8) Original Motion for Entry of Judgment, Damages, Writ of Possession, Attorneys' Fees and Costs, and Other Relief (First Fee Motion) (91.1 hours); 9) Post-Judgment Motions (13.8). *Id.*, Ex. C. The supplemental materials supplied by 700 Valencia show that between October 1, 2017 and February 2, 2018, 700 Valencia also billed for 25.70 hours or work by attorneys Hughes and Fayne in connection with the Renewed Fee Motion and the Application for Writs of Execution and Possession (both the preparation of the writs and their execution). The Court has reviewed both the timesheets and the breakdown of work completed and finds that the time 700 Valencia seeks is reasonable. The Court's conclusion is based on a number of considerations.

First, the Second Hughes Declaration and attorney time sheets attached thereto reflect that 700 Valencia's counsel exercised billing judgment and wrote off time that counsel did not believe should be billed to the client. Second Hughes Decl. ¶ 17. Further, the fee request includes fees only for work that was actually billed to 700 Valencia. *Id.* ¶ 13.

Second, the Court finds that the time spent on the various tasks listed in Exhibit C, as well

as the time reflected in 700 Valencia's supplemental materials, was reasonable. Farina contends the time spent by counsel on these tasks was excessive, pointing out that its own attorney, who handled this case alone, billed fewer hours for some of the same categories of work. First Opposition [Dkt. No. 106] at 5. "Although opposing counsel's billing records may be relevant to determining whether the prevailing party spent a reasonable number of hours on the case, those records are not dispositive . . . and the district court has the discretion not to rely on them." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Here, the time spent by Mr. Bohachek on various tasks does not provide a particularly useful guidepost for determining whether the time spent by 700 Valencia was reasonable. While Farina chose to retain a solo practitioner, 700 Valencia was not required to follow suit. Moreover, Farina "lost this case, so [Farina's] approach does not recommend a model for conducting litigation." *Chabner v. United of Omaha Life Ins. Co.*, No. C-95-0447 MHP, 1999 WL 33227443, at *3 (N.D. Cal. Oct. 12, 1999).

Third, 700 Valencia reduced certain time entries by between 20% and 50% to exclude time for work on some topics that were not directly related to the unlawful detainer action on which it prevailed. *See* Second Hughes Dec. ¶¶ 14-15. In particular, 700 Valencia attempted to segregate fees for: (a) the construction defect and return of security deposit claims asserted by Farina in Case No. 15-cv-02286; (b) 700 Valencia's unlawful detainer claims against defendant Luca Minna and the related motion to dismiss and motion for attorneys' fees; (c) miscellaneous issues that arose during the litigation, such as issues concerning Units 8 and 9 of the commercial property located at 702-706 Valencia Street, San Francisco, California. *Id*. ¶ 14. Farina argues that any attempt to segregate these issues would be "arbitrary" and therefore, the Court should not award any attorneys' fees. First Opposition at 6. The Court disagrees. While it may be impossible to parse out with mathematical precision the exact amount of fees incurred in connection with the issues discussed above, the Court has reviewed the specific time entries and reductions made by 700 Valencia's counsel and finds them to be on the conservative side and more than reasonable. As a practical matter, only a tiny fraction of the litigation related to the issues listed above and therefore, the reductions proposed by 700 Valencia adequately take into account work that was unrelated to the unlawful detainer claim.

8

Fourth, 700 Valencia has reduced its fees in cases where multiple attorneys attended depositions or trial, charging only for the time of one attorney. Second Hughes Decl. ¶ 14.

Finally, 700 Valencia does not seek to recover *any* of the fees incurred in this action by the Benjamin Law Group, which represented 700 Valencia in the early stages of this case.

For these reasons, the Court concludes that the time billed by 700 Valencia is reasonable.

### 3. Conclusion

Based on the rates and hours discussed above, the lodestar amount is $715,041.38.[5] The Court further finds that there are not factors that warrant a reduction or enhancement of this amount. Therefore, the Court awards $715,041.38 in attorneys' fees.

### C. Costs

700 Valencia lists its costs on a standard Bill of Costs form, seeking the following costs: 1) $3,147.90 (service of process under Civ. L. R. 54-3(a)(2)); 2) $1,097.85 (other transcripts, by order or stipulation, under Civ. L. R. 54-3(b)(3)); 3) $8,159.71 (deposition transcripts/ videos under Civ. L. R. 54-3(c)(1)); 4) $277.60 (government records under Civ. L. R. 54-3(d)(1)); 5) $299.27 (disclosure/ formal discovery documents under Civ. L. R. 54-3(d)(2)); 6) $8,654.46 (visual aids under Civ. L. R. 54-3(d)(5)). Second Hughes Decl., Ex. D. In addition, 700 Valencia requests $3,055.77 for computerized research costs as a component of its attorneys' fees award. Farina does not dispute that 700 Valencia is entitled to the amounts requested for other transcripts (item 2), deposition transcripts /videos (item 3), government records (item 4), and disclosure/formal discovery documents (item 5) under Rule 54-3. Because 700 Valencia has supplied invoices documenting these amounts, *see* Second Hughes Decl., Ex. E, they are awarded in full. Below, the Court addresses the disputed costs.

### 1. Service of Process

700 Valencia seeks $3,147.90 for "service of process." This amount is based on six items, four of which Farina concedes should be awarded. *See* Second Hughes Decl., Ex. E (invoices); First Opposition [Docket No. 106] at 8 (listing costs that Farina concedes should be awarded for

---

[5] This amount is $104 less than the lodestar requested by 700 Valencia, reflecting the downward adjustment of the rate for legal assistant Marc Scheiss from $355/hour to $335/hour.

9

service of process). The two disputed items are: 1) a charge of $215.50 for attempted service of a deposition subpoena on Erika McDowell; and 2) $2,156.77 for a private investigator to locate Ms. McDowell after service attempts were unsuccessful. It is well-established that under 28 U.S.C. § 1920, which allows "[f]ees of the clerk and marshal" to be taxed, a court may award the cost of private service of a subpoena. *See Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990). As 700 Valencia has provided an invoice documenting that expense, and because this attempt at service was reasonable, the Court awards the charge of $215.50 for attempted service on Ms. McDowell.

The Court also finds that 700 Valencia is entitled to the cost of retaining a private investigator to locate Ms. McDowell. A prevailing party may recover as part of a fee award out-of-pocket expenses counsel normally charges fee-paying clients so long as the expenses are substantiated and reasonable in amount. *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005). Fees of private investigators are "routinely charged to fee-paying clients." *Davis v. Sundance Apartments*, No. CIV S071922FCDGGH, 2008 WL 3166479, at *6 (E.D. Cal. Aug. 5, 2008). Further, in light of Farina's refusal to cooperate with 700 Valencia in connection with Ms. McDowell's deposition, the cost of retaining a private investigator to locate her is entirely reasonable. Therefore, the Court awards this amount in full.

### 2. Visual Aids

700 Valencia seeks $8,654.46 for visual aids. Farina does not dispute that such costs may be awarded but contends the amount here is unreasonable. The Court disagrees. The invoices provided by 700 Valencia reflect that the costs associated with "visual aids" were related to the preparation of video clips that were used extensively at trial – in some cases eliminating the need for witnesses to travel to San Francisco to appear in person. The Court has reviewed these detailed invoices and finds the costs to be reasonable. The Court further notes that Farina has pointed to no specific evidence that suggests they are unreasonable. Therefore, the Court awards the amount sought for visual aids in full.

### 3. Electronic Research

700 Valencia requests $3,055.77 for PACER and Westlaw computerized research costs.

The Ninth Circuit has held that expenses for computerized legal research are compensable as "reasonable attorney's fees" so long as "separate billing for such expenses is 'the prevailing practice in the local community.'" *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co*., 460 F.3d 1253, 1258 (9th Cir. 2006) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 287 n. 9 (1989)). APKS typically charges its clients for the costs of computerized research and charged 700 Valencia for the costs here. Second Hughes Decl. ¶ 21. Further, courts in this district commonly award the costs of electronic research as part of fee awards and have found that it is the prevailing practice in the San Francisco Bay area to bill clients for such expenses. *See, e.g., Logtale, Ltd. v. IKOR, Inc*., No. 11-CV-05452-EDL, 2016 WL 7743405, at *5 (N.D. Cal. Oct. 14, 2016) ) (finding that passing on legal research costs is "the prevailing practice" in the local community); *Bd. of Trustees v. Piedmont Lumber & Mill Co*., No. 13-CV-03898-HSG, 2016 WL 4446993, at *3 (N.D. Cal. Aug. 24, 2016) (awarding costs of PACER and legal research as a component of fee award); *Langston v. N. Am. Asset Dev. Corp. Grp. Disability Plan*, No. C 08-02560 SI, 2010 WL 330085, at *8 (N.D. Cal. Jan. 20, 2010) (finding that it is the prevailing practice in the Northern District of California to bill clients separately for Westlaw research), on reconsideration, No. C 08-02560 SI, 2010 WL 1460201 (N.D. Cal. Apr. 12, 2010) (adjusting hourly rate for counsel but leaving in place cost award for Westlaw research); *Mahach–Watkins v. Depee*, C 05–1143 SI, 2009 WL 3401281 (N.D.Cal. Oct. 20, 2009) ("The Court has adjudicated many fee and cost petitions, and finds that attorneys routinely bill their clients" for legal research costs). The Court also finds that the costs requested in this case for PACER and Westlaw research are reasonable and were actually incurred. Therefore, the Court awards these costs in full.

## IV. CONCLUSION

For the reasons stated above, the Court awards $715,041.38 in attorneys' fees, $21,635.79 for costs listed on 700 Valencia's Bill of Costs and $3,055.77 for electronic research.

**IT IS SO ORDERED.**

Dated: February 8, 2018

JOSEPH C. SPERO
Chief Magistrate Judge